UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SARA MURRAY, | CASE NO. 24-cv-00239 |
| Plaintiff, | ORDER |
| v. | |
| KING COUNTY COURT ET AL., | |
| Defendants. | |

## 1. INTRODUCTION

This matter comes before the Court on Plaintiff Sara Murray's Combined Emergency Motion for Reconsideration, Recusal, Injunctive Relief, and to File Documents Under Seal. Dkt. No. 35. For the reasons stated below, the Court GRANTS the motion for reconsideration and DIRECTS the District's Pro Bono Panel Coordinator to try to identify an attorney(s) or law firm from the Pro Bono Panel to represent Murray; DENIES the motion to recuse; DENIES the motion for preliminary injunctive relief; and DENIES without prejudice the motion for permission to file the named report under seal.

**ORDER** - 1

## 2. BACKGROUND

Plaintiff Sara Murray filed this case in the U.S. District Court for the District of Oregon on December 15, 2023. Dkt. No. 1. On the same day, she filed her first motion for appointment of counsel. Dkt. No. 4. In light of the "complex jurisdictional questions" raised by the complaint, the court granted her motion for appointment of counsel "for the limited purpose of advising Murray on: (1) whether to proceed with her case in this court or file her lawsuit elsewhere, and (2) which claims she can plausibly bring in her chosen jurisdiction." Dkt. No. 12.

With assistance of that court-appointed counsel, Murray moved to transfer her case to the Western District of Washington, asserting that "[v]enue is proper in the Western District of Washington as all relevant events took place, and all relevant defendants are located, in King County, Washington." Dkt. No. 15. The Oregon district court granted the motion, Dkt. No. 16, and on February 21, 2024, Murray's case was transferred to this district. Dkt. No. 17. Just after, Murray's counsel withdrew from the representation, having fulfilled the limited purpose for which she had been appointed. Dkt. No. 20.

After Murray's case was transferred to this district, Murray was granted leave to proceed in forma pauperis (IFP). Dkt. No. 26. In the order granting IFP status, the Honorable Michelle Peterson, U.S. Magistrate Judge, "recommend[ed] the complaint be reviewed under 28 U.S.C. § 1915(e)(2)(B) before issuance of summons." Dkt. No. 26 at 1. But on April 8, 2024, before the Court could conduct its Section 1915 review, Murray filed a third amended complaint. Dkt. No. 27.

At 276 pages, the third amended complaint—now the operative pleading—is sprawling in scope, asserting a dizzying litany of claims against 37 distinct defendants. *See id.* Despite its immense length, the pleading appears unfinished, terminating mid-sentence on its final page. *Id.* at 276. While it is hard to make out the exact nature of Murray's claims through the many conclusory and confusing details stated, the gist appears to remain the same as what she pled in her original complaint, which United States Magistrate Judge Jeff Armistead of the District Court of Oregon analyzed as follows:

> "*First*, she claims that state officials discriminated against her based on her disability and gender, failed to accommodate her disability, and denied her due process during child custody proceedings, in violation of the United States Constitution and the Americans with Disabilities Act. … *Second*, she alleges that state officials were negligent in their investigation of abuse allegations against her ex-husband. … *Third*, she alleges that her ex-husband coerced her into signing ownership of her company over to him and continues to unlawfully exercise control over her company. … *Fourth*, she alleges that her ex-husband and others told lies about her, which ruined her social reputation and led to her losing control of her business. … *Finally*, Murray alleges that her ex-husband, his girlfriend, and his mother, have caused her emotional distress by harassing her, stalking her, and mistreating her children.

Dkt. No. 5 at 1–2 (emphasis in original). Murray brings these claims in her own name and on behalf of her minor children, G.E.M. and C.M.M., over whom she no longer has custody.

On April 16, 2024, shortly after Murray's former attorney withdrew from the representation, Murray moved again for appointment of pro bono counsel on behalf of herself and the minor children plaintiffs named in her third amended complaint. Dkt. No. 28. Upon review of the record and applicable law, this Court denied Murray's motion for appointment of counsel, explaining that "[t]hrough her various

filings [Murray] has shown a basic grasp of court procedure and an ability to convey her thoughts in writing," yet due to specific "material defects in her complaint," "has not shown a likelihood of success on the merits of her claim." Dkt. No. 34 at 10. The Court instructed Murray to amend her complaint so as to "replead[ ] her claims in short and plain terms with a focus on the factual, not legal, basis for her causes of action" and granted thirty days to comply. *Id.* The Court also dismissed the claims brought on behalf of Murray's children without prejudice, explaining that non-attorneys generally may not represent others. *Id.* at 5 (citing *Johns v. Ctny. of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997)).

On September 6, 2024, Murray filed this motion, seeking (1) reconsideration of this Court's Order denying appointment of pro bono counsel; (2) recusal of this judge and reassignment of her case to a federal judge outside Washington State; (3) ex parte preliminary injunctive relief ordering, among other things, forensic interviews of Murray's children and temporary placement of the children in Murray's custody; and (4) permission to file a forensic report detailing abuse of one of Murray's children under seal. Dkt. No. 35. The Court considers each of these requests in turn.

### 3. DISCUSSION

**3.1 The Court reconsiders its prior ruling denying appointment of pro bono counsel and refers this case to the District's Pro Bono Panel for potential representation.**

Murray asks the Court to reconsider its ruling denying her appointment of pro bono counsel. "Motions for reconsideration are disfavored," LCR 7(h)(1), and "should not be granted, absent highly unusual circumstances, unless the district

**ORDER** - 4

court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Natraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). "Whether or not to grant reconsideration is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 1041, 1046 (9th Cir. 2003).

Murray alleges a jumble of errors by the Court in its prior ruling, most of which merit no discussion. But her claims about her disability status and its impact on her ability to litigate in her own name require a closer look. In her motion, Murray says that she has Post-Traumatic Stress Disorder (PTSD) symptoms, including "vivid and distressing nightmares involving Cluster B assailants, which force [her] to relive the traumas and physiological pain, [which] have severely impacted [Murray's] daily functioning." Dkt. No. 35 at 13. She claims that her condition causes her "to lose the ability to perform basic daily functions, let alone engage in the complex and demanding process of amending a legal complaint." *Id.* at 14. She submitted two letters from her doctor in support of her motion, attesting to "significant panic attacks, gastrointestinal distress, cognitive lapses and difficulty understanding what is required when in court." *Id.* at 30. And stating a belief that Murray's "mental health condition will be triggered and exacerbated during the [legal] proceedings and as a result, temporarily will not have the capacity to represent herself." *Id.* at 31.

This newly submitted information supports a conclusion that Murray's physical and mental impairments, together with the complexity of the legal issues

ORDER - 5

involved, render her unable to adequately articulate her claims. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (appointment of counsel under Section 1915 appropriate only in "exceptional circumstances"; whether "exceptional circumstances" exists "requires an evaluation of both 'the likelihood of success on the merits [and] the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved.'") (quoting *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)). Murray might present legitimate grievances meriting judicial redress. But the sprawling complexity and lack of factual clarity in her pleadings to-date have hindered the Court's assessment of her claims. Murray has been unable to articulate her claims pro se in a manner that facilitates a proper and efficient Section 1915 review. Accordingly, the Court GRANTS Murray's motion for reconsideration and DIRECTS the District's Coordinator of the Pro Bono Panel to try to identify an attorney(s) or law firm from the Pro Bono Panel to represent Murray for all further proceedings.

The Court notes, however, that it lacks authority to compel counsel to represent Murray. *See Mallard v. United States Dist. Court*, 490 U.S. 296, 298 (1989). Instead, the Court may only "request" counsel to serve. *See* 28 U.S.C. § 1915(e) ("The court may request an attorney to represent any person unable to afford counsel."); *U.S. v. 30.64 Acres of Land*, 795 F.2d 796, 801 (9th Cir. 1986) (holding that Section 1915 permits a court to "request" counsel, not to compel representation). Nor may the Court appoint publicly funded counsel, such as the Federal Public Defender. "The Supreme Court has declared that 'the expenditure of public funds [on behalf of an indigent litigant] is proper only when authorized by

Congress.'" *Tedder v. Odel*, 890 F.2d 210, 211 (9th Cir. 1989) (citing *United States v. MacCollom*, 426 U.S. 317, 321 (1976)). Congress has not provided funds to pay counsel secured under 28 U.S.C. § 1915(e). *See 30.64 Acres of Land*, 795 F.2d at 801.

Thus, the Court cannot *guarantee* representation to Murray. The Court's power, on granting this motion to reconsider, is limited to making a *request* for representation via the pro bono panel. Appointment will be contingent on the panel's capacity to locate counsel willing to voluntarily represent Murray pro bono. Likewise, this order should not be interpreted as appointing counsel to Murray's minor children. A minor child may sue in federal court through an appointed representative, such as a general guardian. Fed. R. Civ. P. 17(c)(1). Murray no longer has custody of her children and has not petitioned the Court to represent their interest, so she does not possess the right to make legal claims or demands—such as the appointment of counsel—on their behalf.

**3.2    The Court denies Murray's request for recusal.**

The Court turns now to Murray's recusal motion. Dkt. No. 35 at 22-23. Noting that "judicial decisions in cases involving domestic violence and abuse can be influenced by unconscious biases," Murray asserts—without citing any particular rulings—that "Judge Whitehead's prior rulings appear to demonstrate a similar bias, raising concerns about Plaintiffs' ability to receive a fair trial." *Id.* Along with asking for recusal (and despite having earlier moved to transfer this case *from* Oregon *to* Washington, *see* Dkt. No. 15), Murray also asks that "this case be reassigned to a federal judge from outside Washington to mitigate concerns of bias and ensure fairness in these proceedings." Dkt. No. 35 at 23. Murray characterizes this transfer request as being "in line with Judge Armstead of the District of

**ORDER** - 7

Oregon's suggestion," yet offers no insight or evidence about the alleged content or context of Judge Armstead's so-called "suggestion." *See id.*

When a party moves to recuse under 28 U.S.C. § 144 or 28 U.S.C. § 455, "the challenged judge will review the motion papers and decide whether to recuse voluntarily." LCR 3(f). A federal judge must disqualify themselves from any proceeding in which their "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Recusal is also required when a party files a "timely and sufficient affidavit that the judge before whom [their] matter is pending has a personal bias or prejudice either against [them] or in favor of any adverse party," 28 U.S.C. § 144, and the judge determines that recusal is appropriate, *United States v. Feldman*, 983 F.2d 144, 145 (9th Cir. 1992).

The standard for recusal under both statutes is the same: "Whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *United States v. McTiernan*, 695 F.3d 882, 891 (9th Cir. 2012) (internal quote omitted). This reasonableness standard matches Canon 3C(1) of the Code of Conduct for the United States Judges, which requires that any basis for challenging a judge's impartiality must be "reasonable" for the judge to be required to recuse. *See generally* Committee on Codes of Conduct Advisory Opinion No. 103: Disqualification Based on Harassing Claims Against Judge (June 2009). "The factors the judge should consider in making the reasonableness determination [include]… the nature of the complaint, the applicable law, and other relevant circumstances." *Id.*

Here, Murray has cited no grounds on which to question the impartiality of the Court. If Murray intends her reference to "Judge Whitehead's prior rulings" to refer to this Court's Order denying her motion for appointment of pro bono counsel, then she falls far short of stating a valid basis for a finding of bias or partiality. "[A] judge's prior adverse ruling is not sufficient cause for recusal." *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986); *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.").

As such, this Court DENIES Murray's motion for recusal and DIRECTS the Clerk of Court to refer this matter to the Chief Judge for review. *See* LCR 3(f) ("If the challenged judge decides not to voluntarily recuse, he or she will direct the clerk to refer the motion to the chief judge, or the chief judge's designee.").

### 3.3 The Court denies Murray's ex parte motion for a Temporary Restraining Order.

The Court turns now to Murray's motion for injunctive relief. Murray asks the Court to (1) "[o]rder immediate forensic interviews of G.E.M. and C.M.M. by a forensic team accredited by the National Childrens Alliance"; (2) "[p]rohibit the involvement of Defendant Alexander Murray or any federal defendants in the transportation or interaction with minor Plaintiffs during these interviews"; (3) "[a]low Plaintiff Sara Murray to seek necessary psychological and medical assessments of the minor Plaintiffs in Oregon, where she resides"; (4) "[o]rder the immediate and secure temporary placement of minor Plaintiffs G.E.M. and C.M.M. with Plaintiff Sara Murray in Oregon without prior notice to the Defendants"; (5)

"[t]emporarily place minor Plaintiffs G.E.M. and C.M.M. with Plaintiff Sara Murray in Oregon"; and (6) "[i]ssue an injunction prohibiting any retaliatory actions by the Court, Defendants, or any associated parties against Plaintiff Sara Murray and her children related to the filing of this Motion." Dkt. No. 35 at 24-25. Because Defendants have not yet been appeared in this case, the Court interprets Murray's application as seeking a Temporary Restraining Order (TRO), not a preliminary injunction. *See* Fed. R. Civ. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party.").

"Motions for temporary restraining orders without notice to and an opportunity to be heard by the adverse party are disfavored and will rarely be granted." LCR 65(b). Under Rule 65 of the Federal Rules of Civil Procedure, the court may issue a temporary restraining order without notice to the adverse party only if (A) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (B) "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). "The stringent restrictions imposed ... by Rule 65 on the availability of *ex parte* temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70*, 415 U.S. 423, 438-439 (1974). In addition to the irreparable injury and certification of notice requirements, courts also consider the likelihood of success on

**ORDER** - 10

the merits before issuing a TRO. *See N. Stevedoring & Handling Corp. v. ILWU, Loc. No. 60*, 685 F.2d 344, 347 (9th Cir. 1982) (holding that temporary restraining orders may be appealed under 28 U.S.C. § 1292(a)(1) because they "can be as dispositive of the merits as a preliminary injunction.").

Murray has not satisfied Rule 65's procedural requirements for obtaining a temporary restraining order. She has not filed an affidavit or verified complaint showing the irreparable harm that will result from denial of immediate injunctive relief. She has not certified in writing any attempts to give notice of the requested relief to the adverse parties. Nor has she offered reasons why such notice should not be required for any or all of the 37 defendants listed in her complaint. Further, and just as decisively, Murray has yet to demonstrate a likelihood of success on the merits. *See* Dkt. No. 34 at 10 (discussing deficiencies in the operative complaint). Murray asks for federal court intervention into state family court proceedings, yet meets none of the substantive or procedural requirements necessary to warrant such extraordinary relief. As such, this Court DENIES Murray's emergency motion for preliminary injunctive relief.

### 3.4   The Court denies Murray's motion to file under seal.

Finally, the Court turns to Murray's motion for "permission to file the forensic report detailing abuse of the minor Plaintiff, C.M.M., under seal." Dkt. No. 35 at 26. Murray asserts that this forensic report "contains highly sensitive and detailed information regarding the alleged abuse suffered by the minor, C.M.M." and that "[d]isclosure of this information in the public record could cause significant

harm to the minor's privacy, emotional well-being, and development." *Id.* Murray further asserts that "[s]ealing the document is necessary to protect privacy and prevent further harm or retaliation against Plaintiffs." *Id.*

The Court will not reach the merits of Murray's argument at this time. Under Local Civil Rule 5(g)(3), a motion to seal a document must include a "certification that the party has met and conferred with all other parties in an attempt to reach agreement on the need to file the document under seal, to minimize the amount of material filed under seal, and to explore redaction and other alternatives to filing under seal[.]" Murray includes no such certification with her motion for permission to seal. Nor *could* she, as Defendants have not been served with the Complaint and therefore have not yet appeared in this litigation. As discussed above, "our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc*, 415 U.S. at 439 (1974). The proper time to raise this motion for permission to file a sealed document would be after Defendants have appeared, and the parties have met and conferred about the need to file the document at-issue under seal.

Therefore, Murray's motion to file the forensic report of C.M.M. under seal is DENIED WITHOUT PREJUDICE.

### 4. CONCLUSION

In sum, the Court orders as follows:

4.1 The Court GRANTS Murray's motion for reconsideration and DIRECTS the District's Coordinator of the Pro Bono Panel to try to

**ORDER** - 12

identify an attorney(s) or law firm from the Pro Bono Panel to represent Murray. Consequently, the Court STRIKES the September 12 filing deadline for Murray's fourth amended complaint, *see* Dkt. No. 35, so that potential new counsel has time to work with Murray on succinctly presenting her claims to the Court.

4.2   The Court DENIES Murray's motion to recuse Judge Whitehead and DIRECTS the Clerk of Court to refer this matter to the Chief Judge for review.

4.3   The Court DENIES Murray's motion for injunctive relief.

4.4   The Court DENIES without prejudice Murray's motion for permission to file the named report under seal.

It is so ORDERED.

Dated this 11th day of September, 2024.

Jamal N. Whitehead
United States District Judge